01

02

03

04

05                          UNITED STATES DISTRICT COURT
                        FOR THE EASTERN DISTRICT OF CALIFORNIA

06  ROBERT D. MCDANIEL,                    )
                                           )
07          Petitioner,                    )    CASE NO. 2:07-cv-01814-RAJ-JLW
                                           )
08          v.                             )
                                           )
09  T. FELKER, Warden,                     )    REPORT AND RECOMMENDATION
                                           )
10          Respondent.                    )
    _____)
11

12          I.      INTRODUCTION

13          Petitioner is a California prisoner who is currently incarcerated at the New Folsom

14  State Prison in Represa, California.  (*See* Docket 1 at 1.)  He was convicted by a jury of first

15  degree murder, first degree burglary, and second degree robbery in the Sacramento County

16  Superior Court on January 21, 2000.  (*See* Dkt. 18, Lodged Document 1 at 1.)  The jury also

17  found true the special circumstances that petitioner committed the murder while he was

18  engaged in a burglary and robbery, and that he was armed with a firearm during the three

19  offenses.  (*See id*.)  He was sentenced to prison for life without the possibility of parole for the

20  murder with special circumstances, plus one year for the armed enhancement.  (*See id*. at 1-2.)

21  Petitioner has filed a petition under 28 U.S.C. § 2254 challenging the sufficiency of the

22  evidence to support the robbery and burglary special circumstance findings.  (*See* Dkts. 14

REPORT AND RECOMMENDATION - 1

01    and 15.)  Respondent has filed an answer to the petition, together with relevant portions of the

02    state court record, and petitioner has filed a traverse in response to the answer.  (*See* Dkts. 17,

03    21, and 22.)  The briefing is now complete and this matter is ripe for review.  The Court,

04    having thoroughly reviewed the record and briefing of the parties, recommends the Court

05    deny the petition, and dismiss this action with prejudice.

06        II.   FACTUAL AND PROCEDURAL HISTORY

07        On direct review, the California Court of Appeal summarized the relevant facts as

08    follows:

09              Keith Peterson was found shot to death in his home.  There
              were no signs of forced entry and the front door was locked; but
10            the house had been ransacked and property was stolen,
              including jewelry as well as stamps and coins from his
11            collections.  Peterson suffered six gunshot wounds, with shots
              to his neck.  The angle of the shots was consistent with the gun
12            having been fired downward, as if Peterson had been kneeling.
              It was known that Peterson was a methamphetamine user and
13            that he frequently paid those who worked on his home with
              methamphetamine rather than cash.  In general, when "people
14            were over at [Peterson's] house . . . there's a pretty fair chance
              they were doing methamphetamine."
15
              Prior to Peterson's death, defendant and codefendant Matthew
16            Pennucci had met with Ron Tynes three times looking for "an
              honest thief" to steal Peterson's coin collection.  At the third
17            meeting, which took place on the day of the murder, Tynes said
              that he had found someone who would do the job, but who
18            wanted half of the property taken.  Defendant stated that he
              would do it himself.  Earlier, defendant had offered Pennucci's
19            girlfriend, Gina Cox, $4,000 to help him rob Peterson.  She
              declined.
20
              Peterson's friends, the Marlers, saw defendant driving near
21            Peterson's house the afternoon before the murder, then saw him
              drive slowly past Peterson's house on the night before the
22            murder and again a number of hours after Peterson was killed.

REPORT AND RECOMMENDATION - 2

01        Codefendant Deanna Cook was defendant's girlfriend, and Pam Hickman was Cook's mother.  In the month following the
02        murder, Cook told Hickman "what had happened."  A few days later, Hickman and defendant were smoking methamphetamine
03        together when he told her that the plan originally involved himself, Pennucci, and a third person; "but since the third party
04        dropped out, [defendant] came by and picked up [Cook] . . . because he needed three."  Defendant said to Hickman that "he
05        went back in the house to make sure the guy was dead."  Defendant also told Hickman that he was the one who had
06        planned the crime, and that it had been planned for several months.

07

08        Another time, when Hickman, defendant, Cook, and Pennucci were together smoking methamphetamine, Pennucci and
09        defendant got into a disagreement about the crime and how the stolen coins should be split between them.  In Hickman's
10        words, defendant said that "he took a big part of it . . . He had the big part of it, you know, because he took all the risk.  Then
11        [Pennucci] says no, he didn't, that him [sic] an[d] [Cook] did. So the stuff that they got should be split between him and
12        [Cook]. . . ." Throughout the disagreement, defendant continued to claim that he had done most of the "hard work and that
13        [Pennucci] and [Cook], you know, had barely anything to do with it."

14        Pennucci's fingerprint was found in Peterson's home.  Neither defendant's nor Cook's fingerprints were found at the scene.

15

16        After Pennucci was arrested, defendant talked to Gina Cox, Pennucci's girlfriend. Defendant instructed Cox to tell Pennucci
17        a story that he could give to the detectives, and to advise him to refuse a polygraph.  Defendant also said that he had told Cook
18        what to say and that they should keep defendant "out of the picture."

19        Other evidence recounted in the parties' briefs implicated
20        defendant, Pennucci, and Cook in the burglary, robbery, and murder.

21 (Dkt. 18, LD 1 at 2-4.)

22

REPORT AND RECOMMENDATION - 3

01          Following his jury trial in Sacramento County Superior Court, petitioner was

02   convicted of first degree murder, first degree burglary, and second degree robbery.  (*See id*. at

03   1.)  The jury also found true special circumstance allegations that petitioner committed the

04   murder while he was engaged in a burglary and robbery within the meaning of California

05   Penal Code § 190.2(a)(17), and that he was armed with a firearm during his commission of

06   the three offenses.  (*See id*. at 1-2; Dkt. 15 at 2.)  He was sentenced to life without the

07   possibility of parole for the murder with special circumstances, plus one year for the armed

08   allegation.  (*See* Dkt. 15 at 2.)  The superior court stayed imposition of a sentence for

09   petitioner's burglary and robbery convictions.  (*See* Dkt. 18, LD 1 at 2.)

10          Petitioner, through counsel, appealed his judgment and sentence to the California

11   Court of Appeal, arguing there was insufficient evidence to support the felony-murder special

12   circumstances set forth in California Penal Code § 190.2(a)(17)(A) and (G).  (*See* Dkt. 9 at 2.)

13   The California Court of Appeal denied petitioner's claim, and affirmed the Sacramento

14   County Superior Court's judgment on February 26, 2003.  (*See* Dkt. 18, LD 1 at 1-8.)

15   Petitioner then presented this claim in his April 1, 2003, petition for review to the California

16   Supreme Court, which was summarily denied on May 13, 2003.  (*See id*., LD 2 at 19-20; *id*.,

17   LD 3.)  Accordingly, respondent admits in the answer that petitioner has properly exhausted

18   his claim that there was insufficient evidence to support the jury's special circumstance

19   findings.  (Dkt. 17 at 2.)

20          Petitioner's initial federal habeas petition, which he filed on September 27, 2006, was

21   dismissed without prejudice as prematurely filed by stipulation of the parties.  (*See* Dkt. 9 at

22   3.)  Petitioner filed a second federal petition on September 4, 2007, and then filed the instant

REPORT AND RECOMMENDATION - 4

01 amended petition on March 18, 2008.  (*See* Dkts. 1 and 14.)  In the answer, respondent does

02 not dispute the timeliness of any claims presented in the amended petition.  (*See* Dkt. 17 at 2.)

03        III.      FEDERAL CLAIM FOR RELIEF

04        Petitioner concedes that he was a "major participant" in the robbery and burglary

05 which resulted in the victim's murder.  (*See* Dkt. 22 at 4.)  His sole contention is that there

06 was insufficient evidence he acted with "reckless indifference to human life" during the

07 commission of those crimes, as required to support the special circumstance findings under

08 California Penal Code § 190.2(a)(17)(A) and (G).  (*See id*. at 1-5; Dkt. 15 at 18-33.)  As a

09 result, petitioner argues that the robbery and burglary special circumstances, which resulted in

10 his sentence of life without the possibility of parole, should be reversed.  (*See* Dkt. 15 at 33.)

11        Respondent alleges that there was sufficient evidence to support the special

12 circumstance allegations.  (Dkt. 17 at 11-12.)  Respondent also asserts petitioner is contending

13 that his sentence violates the Eighth Amendment because of the broad manner in which the

14 California courts have construed the felony-murder special circumstances set forth in

15 California Penal Code § 190.2(d).  (*Id*. at 10-11.)  Petitioner presented this Eighth

16 Amendment argument on direct appeal to the California Supreme Court.  (*See* Dkt. 18, LD 2.)

17 In the traverse, however, petitioner explains he is not raising an Eighth Amendment claim in

18 his federal habeas petition.  (*See* Dkt. 22 at 2.)  Rather, the instant petition only challenges the

19 sufficiency of the evidence "to prove that [petitioner] acted with reckless indifference to

20 human life" during the burglary and robbery which resulted in the victim's murder.  (*Id*. at 3.)

21

22

01        IV.     STANDARD OF REVIEW

02        The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

03   petition because it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S.

04   320, 326-27 (1997).  Because petitioner is in custody of the California Department of

05   Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

06   vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.)

07   (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in

08   custody pursuant to a state court judgment….").  Under AEDPA, a habeas petition may not be

09   granted with respect to any claim adjudicated on the merits in state court unless petitioner

10   demonstrates that the highest state court decision rejecting his petition was either "contrary to,

11   or involved an unreasonable application of, clearly established Federal law, as determined by

12   the Supreme Court of the United States," or "was based on an unreasonable determination of

13   the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

14   § 2254(d)(1) and (2).

15        As a threshold matter, this Court must ascertain whether relevant federal law was

16   "clearly established" at the time of the state court's decision.  To make this determination, the

17   Court may only consider the holdings, as opposed to dicta, of the United States Supreme

18   Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to

19   lower federal court decisions to determine what law has been "clearly established" by the

20   Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v.*

21   *Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent

22   remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v.*

REPORT AND RECOMMENDATION - 6

01 *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

02        The Court must then determine whether the state court's decision was "contrary to, or

03 involved an unreasonable application of, clearly established Federal law." *See Lockyer v.*

04 *Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may

05 grant the writ if the state court arrives at a conclusion opposite to that reached by [the]

06 Supreme] Court on a question of law or if the state court decides a case differently than [the]

07 Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

08 "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

09 state court identifies the correct governing legal principle from [the] Court's decisions but

10 unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. At all

11 times, a federal habeas court must keep in mind that it "may not issue the writ simply because

12 [it] concludes in its independent judgment that the relevant state-court decision applied clearly

13 established federal law erroneously or incorrectly. Rather that application must also be

14 [objectively] unreasonable." *Id.* at 411.

15        In each case, the petitioner has the burden of establishing that the state court decision

16 was contrary to, or involved an unreasonable application of, clearly established federal law.

17 *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). To determine

18 whether the petitioner has met this burden, a federal habeas court looks to the last reasoned

19 state court decision because subsequent unexplained orders upholding that judgment are

20 presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

21 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

22

01          Finally, AEDPA requires federal courts to give considerable deference to state court

02   decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

03   Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

04   *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

05   (9th Cir. 1993)).

06          V.       DISCUSSION

07          A.       *Habeas Review of a Claim of Insufficient Evidence to Support the Conviction*

08          The U.S. Supreme Court has determined that a prisoner who challenges the

09   sufficiency of the evidence to support a state criminal conviction under 28 U.S.C. § 2254 has

10   clearly stated a federal constitutional claim under the Due Process Clause.  *See In re Winship*,

11   397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction

12   except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime

13   with which he is charged.").  For a federal habeas court, "[t]he relevant question is whether,

14   after viewing all of the evidence in the light most favorable to the prosecution, *any* rational

15   trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

16   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Lewis v. Jeffers*, 497 U.S. 764, 781

17   (1990).  In this context, "[c]ircumstantial evidence and inferences drawn from it may be

18   sufficient to sustain a conviction."  *United States v. Lewis,* 787 F.2d 1318, 1323 (9th Cir.

19   1986).  If the record supports conflicting inferences, the Court "must presume - even if it does

20   not affirmatively appear in the record - that the trier of fact resolved any such conflicts in

21   favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

22

REPORT AND RECOMMENDATION - 8

01          When a state court has considered a sufficiency of the evidence claim, AEDPA

02  requires a federal habeas court to afford an additional degree of deference to the state court's

03  decision.  Consequently, habeas relief is not warranted unless "the state court's application of

04  the *Jackson* standard [was] 'objectively unreasonable.'" *Juan H. v.* Allen, 408 F.3d 1262,

05  1275 n.13 (9th Cir. 2005).  A federal habeas court must therefore look to state law to establish

06  the "essential elements" of the offense, and then turn to the federal question of whether the

07  last-reasoned state court decision was objectively unreasonable in concluding that sufficient

08  evidence supported the conviction pursuant to the standards set forth in *Jackson* and *Winship*.

09  *See Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009); *Allen*, 408 F.3d at 1274.

10          After a careful review of the record, this Court concludes that the California Court of

11  Appeal's conclusion that the evidence was sufficient to support the jury's special

12  circumstance findings with respect to petitioner was a reasonable application of the *Jackson*

13  standard.  As discussed below, when viewing the evidence in the light most favorable to the

14  prosecution, the Court finds that a rational trier of fact could have determined beyond a

15  reasonable doubt that petitioner acted with "reckless indifference to human life" during the

16  commission of the burglary and robbery.

17          B.    *California's Felony-Murder Special Circumstance Statute*

18          The "essential elements" of petitioner's special circumstance convictions are set forth

19  in § 190.2 of the California Penal Code, which provides that "the penalty for a defendant who

20  is found guilty of murder in the first degree is death or imprisonment in the state prison for

21  life without the possibility of parole if one or more . . . special circumstances has been found

22  . . . to be true" at trial.  Cal. Penal Code § 190.2.  *See People v. Estrada*, 11 Cal.4th 568, 571-

01   72 (1995).  The felony-murder special circumstance is set forth in § 190.2(a)(17).  This

02   provision provides that "the murder was committed while the defendant was engaged in, or

03   was an accomplice in, the commission of, attempted commission of, or the immediate flight

04   after committing, or attempting to commit, [any of twelve specified] felonies," including

05   burglary and robbery.  Cal. Penal Code § 190.2(a)(17); *see id*. § 190.2(a)(17)(A) and (G).

06        In addition, to meet the special circumstance requirements of § 190.2(a)(17), a

07   defendant must have either (1) been the actual killer of the victim, (2) possessed an intent to

08   kill the victim, even if that defendant was not the actual killer, or (3) acted with "reckless

09   indifference to human life" and as a "major participant" in one of the specified felonies, even

10   if the defendant was not the actual killer and did not possess any intent to kill.  *Id*. § 190.2(b) -

11   (d).  Thus, under § 190.2(d), a defendant who was not the actual killer and did not have intent

12   to kill, but "who, with *reckless indifference to human life* and *as a major participant*, aids,

13   abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony

14   enumerated in [§ 190.2(a)(17)] which results in the death of some person or persons, and who

15   is found guilty of murder in the first degree therefor, shall be punished by death or

16   imprisonment in the state prison for life without the possibility of parole if a special

17   circumstance enumerated in [§ 190.2(a)(17)] has been found to be true . . . ."  *Id*. § 190.2(d)

18   (emphasis added).

19        The "statutory language of section 190.2(d) . . . derives verbatim from the United

20   States Supreme Court's decision in *Tison v. Arizona*."  *People v. Estrada*, 11 Cal.4th 568, 575

21   (1995) (internal citations omitted).  In fact, subsection (d) was added to § 190.2 in order to

22   bring California law into conformity with the *Tison* decision.  *See id*.; *People v. Proby*, 60

REPORT AND RECOMMENDATION - 10

01   Cal.App.4th 922, 927-28 (1998); *People v. Bustos*, 23 Cal.App.4th 1747, 1753 (1994).   *Tison*

02   involved two brothers sentenced to death for committing first degree murder in connection

03   with armed robbery, kidnapping, and theft of a motor vehicle.   The U.S. Supreme Court held

04   that the death penalty may be constitutionally imposed under the Eighth and Fourteenth

05   Amendments on an accomplice to a felony-murder where there was "major participation in

06   the felony committed, combined with reckless indifference to human life."   *Tison v. Arizona*,

07   481 U.S. 137, 158 (1987).

08          Because "*Tison* is the source of the language of section 190.2(d) . . . the constitutional

09   standards set forth in that opinion are therefore applicable to all allegations of a felony-murder

10   special circumstance [under California law], regardless of whether the People seek and exact

11   the death penalty or a sentence of life without parole."   *Estrada*, 11 Cal.4th at 575-76.

12   Significantly, the *Tison* court observed that "the reckless disregard for human life implicit in

13   knowingly engaging in criminal activities known to carry a grave risk of death represents a

14   highly culpable mental state . . . ."   *Id*. at 157-58.   In the high court's view, "some

15   nonintentional murders may be among the most dangerous and inhumane of all . . . [such as]

16   the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that

17   the desire to rob may have the unintended consequence of killing the victim as well as taking

18   the victim's property.   This reckless indifference to the value of human life may be every bit

19   as shocking to the moral sense as an 'intent to kill.'"   *Id*. at 157.   Finally, the *Tison* court

20   noted that although "major participation" and "reckless indifference to human life" are

21   distinct requirements, they will frequently overlap.

22

01
02
03
04

> For example, we do not doubt that there are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life. Moreover, even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding.

05 *Id*. at 158 n.12.

06    The California Supreme Court has also clarified the meaning of the statutory phrase

07 "reckless indifference to human life" in § 190.2(d) in the case *People v. Estrada*. *Estrada*

08 involved two defendants who were convicted of committing first degree murder during the

09 commission of a robbery and burglary. *See Estrada*, 11 Cal.4th at 572. Like petitioner, the

10 two defendants in *Estrada* were sentenced to life without the possibility of parole, and their

11 sentences for the robbery and burglary convictions were stayed by the trial court. *See id*. at

12 573. The *Estrada* court held that *Tison* "instructs that the culpable mental state of 'reckless

13 indifference to life' is one in which the defendant '*knowingly engage[es] in criminal activities*

14 *known to carry a grave risk of death*,' and it is this meaning that [the California Supreme

15 Court] ascribe[s] to the statutory phrase 'reckless indifference to human life' in section

16 190.2(d)." *Id*. at 577 (internal citations omitted). In other words, "reckless indifference to

17 human life" means that a defendant subjectively appreciated that his or her participation in a

18 felony created a grave risk to human life. *Id*. at 581.

19    C.    *Decision of the California Court of Appeal*

20    In the last reasoned state court decision, the California Court of Appeal made the

21 following findings regarding petitioner's claim that there was insufficient evidence that he

22 acted with "reckless indifference to life" during the commission of the burglary and robbery:

REPORT AND RECOMMENDATION - 12

01          [D]efendant argues the evidence was insufficient to establish
            that he acted with reckless indifference to human life while
02          committing the burglary and robbery . . . We disagree.

03          "Reckless disregard for human life [is] implicit in knowingly
            engaging in criminal activities known to carry a grave risk of
04          death . . . ." (*Tison v. Arizona*, *supra*, 481 U.S. at p. 157. . . .)
            Accordingly, "[t]he term 'reckless indifference to human life'
05          means 'subjective awareness of the grave risk to human life
            created by his or her participation in the underlying felony.'"
06          (*People v. Proby*, *supra*, 60 Cal.App.4th at p. 928, quoting
            *People v. Estrada* (1995) 11 Cal.4th 568, 578.)

07

08          Defendant, Pennucci, and Cook entered Peterson's home with
            the intent to steal valuable property from him.  They were
            armed with guns, thus demonstrating that they were prepared to
09          confront anyone they found in the residence and take the
            property by force if necessary.  It was well-known that Peterson
10          was a drug user, who himself possessed a gun.  In these
            circumstances, "defendant had to be aware of the risk of
11          resistance to such an armed invasion of the home and the
            extreme likelihood that death could result." [internal citations
12          omitted]

13          Regardless of what role that defendant played in the actual
            shooting, he was liable for the special circumstance because he
14          was a major participant in the burglary and robbery, who acted
            with reckless indifference to human life in committing those
15          crimes.

16   (Dkt. 18, LD 1 at 7-8.)

17          D.    *Analysis*

18          As discussed *supra*, petitioner "concedes that the evidence was sufficient to establish

19   that he was a 'major participant' in the killing of Keith Peterson . . . ." (Dkt. 15 at 22; *see*

20   Dkt. 22 at 4.)  He contends, however, that contrary to the findings of the California Court of

21   Appeal, there was insufficient evidence that he acted with "reckless indifference to human

22   life" during the commission of the burglary and robbery, as required to support the special

REPORT AND RECOMMENDATION - 13

01 circumstances that the murder was committed in furtherance of the burglary and robbery

02 within the meaning of California Penal Code § 190.2(a)(17)(A) and (G).  (*See* Dkt. 15 at 18-

03 33; Dkt. 22 at 1-5.)  Specifically, petitioner asserts there was "no evidence whatsoever about

04 the circumstances of the shooting" and "[t]he role of each of the three defendants in the

05 shooting is unknown . . . At most, the evidence relied on by the Court of Appeal shows that

06 the shooting was foreseeable."  (Dkt. 22 at 3 and 5.)

07        Contrary to petitioner's claim, however, the California Court of Appeal's finding that

08 the evidence was sufficient to support the jury's finding that petitioner acted with "reckless

09 indifference for human life" because he "had to be aware of the risk of resistance to such an

10 armed invasion of the home and the extreme likelihood that death could result" was an

11 objectively reasonable application of the *Jackson* standard.  *See Allen*, 408 F.3d at 1274.

12 The evidence presented at trial established that petitioner planned the burglary and robbery of

13 the victim over the course of several months while attempting to recruit several other

14 individuals, with varying success, to assist him.  (*See* Dkt. 18, LD 12 at 254-55, 354-55, 525-

15 29, and 678-79.)  It was well-known that the victim was a habitual drug user who kept a

16 firearm in his home.  (*See id*. at 103-04, 123-25, and 431-32.)  Petitioner determined that "he

17 needed three" people to successfully carry out the burglary and robbery, and he searched for

18 "an honest thief" to help him.  (*See id*. at 256, 276, and 355.)  Although petitioner declared on

19 one occasion that he could do it himself, he did not carry out the offenses until he had

20 successfully recruited two other crime partners.  (*See id*. at 258-59 and 277-79.)  Petitioner,

21 Pennucci, and Cook then carried out the burglary and robbery, during which the victim was

22 shot six times and killed.  (*See id*. at 212-13, 222, 275-76, 350, and 352.)  Following the

REPORT AND RECOMMENDATION - 14

01  murder, the three perpetrators argued about who did most of the hard work during the crime,

02  and how the proceeds should be distributed between them.  (*See id.* at 347, 350-51, and 398-

03  99.)

04        Based upon this evidence, viewed in the light most favorable to the prosecution, a

05  rational trier of fact could have reasonably inferred that petitioner assembled and armed a

06  group of three perpetrators to ensure that the victim was outnumbered during the burglary and

07  robbery precisely because petitioner was subjectively aware of the grave risk that death could

08  result from the confrontation between the armed perpetrators and the victim, a well-known

09  drug user in possession of a firearm.  As petitioner concedes in his traverse, "the evidence . . .

10  shows that the shooting was foreseeable."  (Dkt. 22 at 3-5.)  Furthermore, a rational trier of

11  fact could have found beyond a reasonable doubt that petitioner acted with "reckless

12  indifference to human life" regardless of "what role [petitioner] played in the actual

13  shooting," because "reckless indifference to human life" does not require evidence that

14  petitioner was the actual killer, or possessed any intent to kill at the time of the shooting.

15  (Dkt. 18, LD 1 at 8.)  *See* Cal. Penal Code § 190.2(b)-(d).

16        Petitioner has therefore failed to demonstrate that the California Court of Appeal was

17  objectively unreasonable in concluding that sufficient evidence supported the conviction

18  pursuant to the standards set forth in *Jackson* and *Winship*.  *See Briceno v. Scribner*, 555 F.3d

19  1069, 1078 (9th Cir. 2009); *Allen*, 408 F.3d at 1274.  Accordingly, sufficient evidence

20  supported the jury's special circumstances findings under California Penal Code

21  § 190.2(a)(17), and petitioner's claim for federal relief should be denied.

22

REPORT AND RECOMMENDATION - 15

01      VI.    CERTIFICATE OF APPEALABILITY

02          The federal rules governing habeas cases brought by state prisoners have recently been

03  amended to require a district court that denies a habeas petition to grant or deny a certificate

04  of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

05  § 2254 (effective December 1, 2009).

06          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

07  dismissal of his federal habeas petition only after obtaining a certificate of appealability from

08  a district or circuit judge.  A judge shall grant a certificate of appealability only where a

09  petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28

10  U.S.C. § 2253(c)(3).  The certificate must indicate which issues satisfy this standard.  *See id.*

11  § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the

12  showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that

13  reasonable jurists would find the district court's assessment of the constitutional claims

14  debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 474 (2000).

15          For the reasons set out in the discussion of the merits, above, jurists of reason would

16  not find the result debatable.  Accordingly, I recommend that the Court decline to issue a

17  certificate of appealability.  Petitioner is advised that he may not appeal the denial of a

18  certificate of appealability in this Court.  Rather, he may seek a certificate from the court of

19  appeals under Rule 22 of the Federal Rules of Appellate Procedure.

20      VII.    CONCLUSION

21          For the reasons set forth above, the California Court of Appeal's decision denying

22  petitioner's claim was not contrary to, or an unreasonable application of, clearly established

REPORT AND RECOMMENDATION - 16

01  federal law, or based on an unreasonable determination of facts.  I therefore recommend that

02  petitioner's amended habeas petition (Dkt. 14) be DENIED and this action DISMISSED with

03  prejudice.  Furthermore, I recommend the Court decline to issue a certificate of appealability.

04       This Report and Recommendation is submitted to the United States District Judge

05  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

06  days after being served with these findings and recommendations, any party may file written

07  objections with the court and serve a copy on all parties.  Such a document should be

08  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response

09  to the objections shall be filed and served within fourteen (14) days after service of the

10  objections.  The parties are advised that failure to file objections within the specified time

11  may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th

12  Cir. 1991).  A proposed order accompanies this Report and Recommendation.

13       DATED this 6th day of January, 2010.

14

15

16

       JOHN L. WEINBERG
17       United States Magistrate Judge

18

19

20

21

22

REPORT AND RECOMMENDATION - 17